Robert W. Dickerson, Jr. (SBN 89367)
E-mail:  rdickerson@bwslaw.com
Matthew D. Murphey (SBN 194111)
E-mail:  mdmurphey@bwslaw.com
John Yang (SBN 262065)
E-mail:  jyang@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel:  213.236.0600      Fax:  213.236.2700

Attorneys for Plaintiff
HYPERTEXT TECHNOLOGIES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYPERTEXT TECHNOLOGIES, LLC,<br><br>                 Plaintiff,<br><br>v.<br><br>APPLE INC. and DOES 1-10, inclusive,<br><br>                 Defendants. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

For its complaint against Defendants, Plaintiff Hypertext Technologies, LLC ("Hypertext") alleges as follows:

1.      Plaintiff Hypertext Technologies, LLC ("Hypertext") files this complaint against defendant Apple Inc. ("Apple") and the Doe defendants, alleging infringement of U.S. Patent No. 7,113,801 (the "'801 Patent").

2.      The accused products ("Accused Products") include Apple's devices that store and execute SMS (Short Message Service) text messaging application(s), for example, *iMessage*, that receive an SMS text message including an application protocol identifier and URL information, and use the application protocol identifier and the URL information to receive data from a web server using an application program stored and executed by the Accused Products, such as a web browser,

where the amount of such received data can significantly surpass the 140-byte size limitation of the SMS text message.

**PLAINTIFF HYPERTEXT AND THE ASSERTED PATENT**

3.      Plaintiff Hypertext is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business in Mission Viejo, California.

4.      Hypertext is the owner of all right, title and interest in and to the '801 Patent, entitled "Method For Receiving Data Using SMS And Wireless Internet And System Thereof," which issued on September 26, 2006.  A true and correct copy of the '801 Patent is attached as Exhibit A.

**DEFENDANT APPLE AND THE ACCUSED PRODUCTS**

5.      Defendant Apple is a California corporation with its principal place of business in California and having regular and established places of business in this judicial district.

6.      There may be other individuals and entities besides Apple who have some involvement and liability for the wrongful acts alleged herein.  Therefore, as their true names or capacities are at this time unknown to Plaintiff, they are sued herein under the fictitious names Does 1 through 10, inclusive.   Plaintiff reserves the right to amend this Complaint as appropriate to specifically identify such Doe defendant(s).

7.      Apple has been developing, making, having made, importing, using, offering for sale, and/or selling the Accused Products that infringe the '801 Patent.  Apple also induces, encourages, urges and instructs others, including importers, distributors, sellers, and users of the Accused Products, to engage in activities that infringe the '801 Patent.

8.      The Accused Products include, but are not limited to, Apple iPhones, which include one or more web browsers and one or more SMS messaging applications, such as the *iMessage* SMS application.

9.     Hypertext reserves the right to amend its infringement allegations after discovery is taken of Apple.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

10.     Plaintiff Hypertext asserts claims for patent infringement against defendant Apple and the Doe defendants under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281, *et seq*.  The Court has original jurisdiction over the '801 Patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a).

11.     Plaintiff Hypertext's principal place of business is in this judicial district.

12.     The Court has personal jurisdiction over Apple.  Apple has committed and is continuing to commit acts of infringement in this district, including importing, offering for sale, selling and/or using infringing systems in this judicial district.

13.     Venue is proper in this district under 28 U.S.C. § 1400(b).  In addition to having committed and continuing to commit acts of infringement in this district, Apple has several established places of business in this district.  These include numerous "Apple Store" retail locations at which Accused Products have been use, offered for sale and sold, and are still being used, offered for sale and sold, including at Apple Brea Mall, 1016C Brea Mall, Brea, CA 92821; Apple Fashion Island, 1113 Newport Center Drive, Newport Beach, CA 92660; Apple Mission Viejo, 936C Shops at Mission Viejo, CA 92691; Apple Irvine Spectrum Center,

///
///
///
///
///
///
///

763 Spectrum Center Drive, Irvine, CA 92618; Apple Los Cerritos, 242 Los Cerritos Center, Cerritos, CA 90703; and Apple South Coast Plaza, 333 Bear Street, Costa Mesa, CA 92626 (www.apple.com/retail), as shown in the follow graphic:



14.    Each location in the graphic above: (i) is a physical place in the Central District of California (each consisting of a building or a part of a building from which business is conducted); (ii) operates the business of Apple in a regular, steady, uniform, orderly, settled, fixed, and permanent manner; and (iii) is owned or leased by Apple, and has been ratified by Apple as a place of business ("Apple Retail Stores").

15.    In addition, these Apple Retail Stores are represented by Apple to the consuming public as being its places of business in this judicial district and are listed and advertised by Apple as such on its website.  For example, the screenshot above was taken from the website www.apple.com/retail, in response to a search for Apple Retail Stores in "Santa Ana, California."

16.    Each of these locations is therefore a regular and established place of business owned and operated by Apple for purposes of §1400(b).  Collectively

these stores (along with other Apple Retail Stores in this judicial district) conclusively establish Apple's "presence" in this district, such that it can be sued here for patent infringement.

17.     In addition, Apple has also repeatedly been involved in litigation in this judicial district, including bringing suit as a plaintiff in this judicial district.

18.     This judicial district, in which Apples has often been sued and has itself brought suit, is an appropriate and convenient forum for this patent infringement suit against Apple.

## CLAIM FOR RELIEF
## FOR PATENT INFRINGEMENT

19.     Hypertext incorporates by reference each of the allegations in the foregoing paragraphs and further alleges as follows:

20.      On September 26, 2006, the United States Patent and Trademark Office duly issued the '801 Patent, which has an effective filing date of February 6, 2001 ("Effective Filing Date") based upon a claim of priority to corresponding parent patent application filed on that date in the Republic of Korea. ['801 Patent, Title Page, Paragraph (30)].  The technology disclosed and claimed in the parent patent application and in the '801 Patent was invented by engineers at KTFreetel Co., Ltd. ("KTFreetel"), a (South) Korean company.

21.     KTFreetel was, both before and after the Effective Filing Date, a global leader in research and technology relating to telecommunications, including cellular communications and messaging.  The parent patent application and the '801 Patent were initially assigned to KTFreetel.  KTFreetel was later merged into Korea Telecom, which was and is the largest telecommunications company in (South) Korea.

22.     All maintenance fees on the '801 Patent have been paid timely and fully to the United States Patent and Trademark Office (as shown on Exhibit B, attached).

23.     The chain of title for the '801 Patent as listed in the United States Patent and Trademark Office database is attached as Exhibit C.  To the best of Hypertext's knowledge, information and belief, this chain of title as to its predecessors-in-interest is complete and accurate, such that Hypertext is now the legal owner of all right, title and interest in and to the '801 Patent, including the right to sue infringers of the '801 Patent (including Apple) and collect damages for past, present and future infringement of the '801 Patent.

24.     To the best of Hypertext's knowledge, information and belief, Hypertext is not aware of any prior owner or any licensee of the '801 Patent that has ever offered for sale or sold a product that included the patented technology, such that there has never existed a requirement for "marking" of the '801 Patent's number on any product in accordance with the Patent Laws, and there is no requirement to "mark" as to a patented "process."  *See, generally,* 35 U.S.C. § 287.

25.     Therefore, neither actual nor constructive notice by Apple of the '801 Patent is required in order for Apple to be liable to Hypertext for damages extending back at least six years before the filing date of this Complaint.

26.     Each claim of the '801 Patent is directed to and is rooted in computer technology, improves the operation of the Accused Products, and is not directed to merely an abstract idea.  Each claim of the '801 Patent does not merely recite and is not limited to a previously well known, understood, and used system or process that has merely been replicated on a computer.  There is no "pen and paper" equivalent to the patented technology.

27.     The claimed inventions in the '801 Patent improved the SMS technology for communication of SMS text messages between computing devices, such as the Accused Products.

28.     The acronym SMS stands for Short Message Service.  The adjective "Short" refers to the noun "Message" and accurately describes the small or "short" size of a message that can be sent via SMS.  Indeed, as of the Effective Filing Date,

each SMS message was limited to 140 bytes of data.   That is still the case today.

29.     This small maximum byte size of the SMS message was a significant problem and drawback to the widespread use of SMS messages.

30.     Because of this restricted size, the use of SMS messaging technology was similarly restricted, being used as of the Effective Filing Date mainly for providing small amounts of information, such as weather information, stock pricing information, and other similarly truncated data. ['801 Patent, Col. 1, ln. 39 - 42].

31.     Computer files that are routinely transmitted today using personal computing devices, such as an image file, a video file and the like, could not have been sent using the SMS technology as of the Effective Filing Date.  ['801 Patent, Col. 1, ln. 43-46].  The SMS technology then was too limited for widespread use with a wide array of information and data, and could not be used to transmit anything other than "short messages" as of the Effective Filing Date.

32.     Today, however, that is no longer the case.  It has been estimated that by the end of 2010, SMS technology was the most widely used data communications technology, with an estimated 3.5 billion users, or about 80% of all mobile subscribers. [https://en.wikipedia.org/wiki/SMS, citing to Ahonen, Tomi T. (January 13, 2011) *Time to Confirm Some Mobile User Numbers: SMS, MMS, Mobile Internet, M-News*, Communities Dominate Brands].

33.     Today, much of the use of SMS technology is in mobile marketing, a type of direct marketing.  Indeed, according to one market research report, as of 2014 the global SMS messaging business was estimated to be worth over $100 billion, accounting for almost 50% of all revenue generated by mobile marketing. [*Id.* Citing to Portio Research, *Mobile Messaging Futures 2014-2018*; *see also* https://www.businesswire.com/news/home/20150212006013/en/Research-Markets-Mobile-Messaging-Futures-2014-2018-Key].

34.     A vitally important feature of the mobile marketing using SMS technology is the ability to include within the SMS text message a URL link, which

a recipient of the SMS text message can simply "click on" or "tap on" to be transported to that URL website ("embedded SMS clickable links").

35.     These embedded SMS clickable links are an important factor in what has made SMS such a widely used technology today, and particularly with respect to mobile marketing, where the marketeer can include an embedded SMS clickable link in the SMS text message, and the potential customer recipient merely has to click or tap on that link to be "transported" to the marketeer's website.

36.     It is as if the entirety of the marketeer's website (or any other website of the marketeer's choosing) is set forth in the SMS text message.  This feature greatly enhanced the usability and value of SMS technology.

37.     Being able to circumvent the small-size restriction on the maximum number of bytes (and in turn, characters) that can be included in an SMS message opened the door to modern SMS mobile marketing.

38.     But the embedded SMS clickable links are not just useful in mobile marketing.  Embedded SMS clickable links can be used to "transport" the SMS text message recipient to literally anything that is accessible via the Internet, such as a photo album from an important event (such as a wedding or anniversary party), music, videos, restaurant locations, menus and reviews, store locations and hours of operation, hospital locations, etc.  The list is almost if not virtually endless.

39.     This advance in the art of SMS technology was revolutionary.  It has allowed the use of SMS technology to expand way beyond its 140-byte limitations.  Without it, the use of SMS messaging would still be limited to things like the weather and stock price reports, "how-are-you" and "where-are-you" messaging between friends and family members, and other short messages.

40.     The patented technology in the '801 Patent has been commercially successful within the United States and globally.

41.     As of the Effective Filing Date, the patented technology in the '801 Patent was novel and nonobvious to a person of ordinary skill in the art.

42.    The patented technology in the '801 Patent has been incorporated in most if not all SMS messaging applications currently available on smartphones, tablet computers, and similar products today.

43.    The infringed claims of the '801 Patent are directed, among other things, to an improvement in the implementation and use of SMS messaging systems that allow for embedding URL information in SMS messages that has been a key factor in making use of SMS messages very popular.  Figure 2 of the '801 Patent, reproduced here, is illustrative:



FIG. 2

44.    The '801 Patent describes this Figure, in part, as follows:

"FIG. 2 is a schematic illustration of a user terminal

receiving data by using SMS (Short Message Service) and

wireless Internet in accordance with one preferred

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT; DEMAND FOR JURY TRIAL

1    embodiment of the present invention." [Col. 3, ln. 14-18].

2        "Referring to FIG. 2, the user terminal 410 receives short

3    messages transmitted from the SMS server 110. The user

4    terminal 410 may comprise a receiver/transmitter 420 for

5    transmitting a URL connecting request, a controller 435 for

6    connecting the communication channel based on application

7    protocols comprised in the received short messages, and

8    storing device 480 for storing program which may be used

9    for executing the controller 435 and connecting the

10    communication channel. [Col. 4, ln. 35-43].

11    45.    Also, the '801 Patent states that Figure 4 of the '801 Patent "is a flow

12  chart flowchart illustrating an automatically connecting process to a web site by

13  using the URL in correspondence with the application protocol comprised in the

14  short message received by the data receiving system in accordance with one

15  preferred embodiment of the present invention." [Col. 3, ln. 23-27].

16    46.    These and other Figures in the '801 Patent are further discussed and

17  described in the '801 Patent. [*See also*, *e.g.,* Col. 5. ln. 57 to Col. 6, ln. 58].

18    47.    The Figures and the discussion and description of them in the '801

19  Patent fully describe the solution to the byte size limitation in SMS text messaging,

20  and how to implement that solution, to a person of ordinary skill in the art as of the

21  Effective Filing Date.

22    48.    The claimed technology in the '801 Patent eloquently solved the

23  problem of the number-of-bytes limitation in SMS text messaging that had

24  theretofore limited its use to short weather reports and the like.

25    49.    The building blocks in the '801 Patent are clearly integrated into

26  something more than an "abstract idea."

27    50.    The claimed inventions here are patent eligible for reasons similar to

28  why the claimed invention in *Enfish, LLC v. Microsoft Corp*. 822 F.3d 1327, 1336

1   (Fed. Cir. 2016) was deemed patent eligible.  The claims of the '801 Patent are

2   directed to a particular improvement to a "device" (in *Enfish*, a computer, here, a

3   computing device, such as a smartphone, with SMS text messaging capability).

4   The claimed invention here is also patent eligible for reasons similar to those relied

5   upon in *Visual Memory LLC v. NVIDIA Corp*, 867 F.3d 1253. 1262 (Fed. Cir.

6   2017), where claims directed to an improved computer system that provided

7   flexibility in use which was not present in the prior art were held patent eligible.

8        51.     The claimed inventions here are patent eligible also for reasons similar

9   to those relied upon in *Core Wireless Licensing S.A.R.L v. LG Electronics, Inc. et.*

10  *al,* 880 F.3d 1356, 1362 (Fed. Cir. 2018), where the Federal Circuit found patent

11  eligible an asserted claim that required "an application summary that can be

12  reached directly from the menu" and "wherein each of the data in the list being

13  selectable to launch the respective application and enable the selected data to be

14  seen within the respective application."  Here, according to the claimed technology

15  of the '801 Patent, the URL "can be reached directly from" the received SMS text

16  message.

17       52.     Each claim of the '801 Patent recites numerous additional

18  unconventional technical steps, each of which is independently sufficient to confer

19  patent-eligibility.

20                **APPLE'S INFRINGEMENT OF THE '801 PATENT**

21       53.     Apple has infringed and continues to infringe claims of the '801 Patent

22  by making, having made, importing, using, offering to sell, and selling the Accused

23  Products that infringe one or more claims of the '801 Patent, including independent

24  claims 1 and 5.

25       54.     An example of the way in which the Accused Products infringe claim

26  1 is provided in the claim chart shown in Exhibit D attached hereto, which is

27  incorporated herein by reference as if fully set forth.

28  ///

55.   Importers, distributors, sellers and users of the Accused Products also infringe the '801 Patent.

56.   Apple has taken, and on information and belief will continue to take, action during the time the '801 Patent is in force intending to cause the acts by those importers, distributors, sellers and users of the Accused Products that infringe the '801 Patent.  Apple actively induces, encourages and urges users of the Accused Products to utilize SMS messaging applications and include an application protocol identifier and URL information in their SMS messages, knowing full well that those users are going to include an application protocol identifier and URL information in their SMS messages.

57.   There is no substantial non-infringing use of the infringing messaging applications of the Accused Products given the limited byte size of an SMS message on the one hand, which, as discussed in the '801 Patent, severely limited the use and usefulness of SMS text messaging before the advent of the claimed technology of the '801 Patent, and continues to limit the use of SMS text messaging without an application protocol identifier and URL information, compared to the massive amount of use and exchange of data using SMS messaging, using the technology described and claimed in the '801 Patent on the other hand.

58.   If, upon Apple's receipt of notice of the '801 Patent, Apple's importers, distributors, seller and/or users of the Accused Products continued or continue to infringe, and Apple does not require its importers, distributors, sellers and users of its Accused Products immediately to stop that infringement, then Apple will at that time become liable for indirect infringement based upon it past and continuing enabling, urging, inducing and contributing to that infringement.

59.   Apple is presently able to cease infringement immediately, and can immediately cause its importers, distributors, sellers and users of the Accused Product to cease infringement, by disabling its messaging applications on the Accused Products, or disabling the ability of those messaging applications to

recognize and execute any function based on application protocol identifier and URL information in the SMS messages received on the Accused Products.  Apple can easily and quickly do this by sending software updates to all Accused Products currently in inventory or in use, and disabling those functions in Accused Products manufactured and/or sold in the future.  Plaintiff reserves the right to amend this Complaint to assert indirect infringement if Apple does not promptly cause the cessation of all infringement on its Accused Products.

60.    Apple may have had either actual or constructive knowledge and/or notice of, or was willfully blind to, the '801 Patent before receiving knowledge of this Complaint.  Hypertext reserves the right to amend its Complaint in this regard after taking discovery of Apple.

61.    Hypertext has been damaged by Apple's infringement of the '801 Patent and is entitled to reasonable royalty damages and, if the circumstances warrant, enhanced damages due to Apple's willful infringement.

## PRAYER FOR RELIEF

Hypertext prays for the following relief:

A.    A judgment in favor of Hypertext that Apple has infringed the '801 Patent and that the '801 Patent is not invalid, is enforceable, and is patent-eligible;

B.    A judgment and order requiring Apple to pay Hypertext compensatory damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '801 Patent, as provided under 35 U.S.C. §284;

///
///
///
///
///
///
///

C.      A judgment that sets a reasonable royalty rate and licensing terms for Apple's ongoing post-judgment infringement if Apple does not cease such infringement, or in the alternative, imposes a permanent injunction against further infringement by Apple of the '801 Patent; and

D.      Any and all other relief to which Hypertext may be entitled.

Dated:  December 12, 2019                    Respectfully submitted,

BURKE, WILLIAMS & SORENSEN, LLP
Robert W. Dickerson, Jr.Matthew D.
Murphey
John Yang

By:  _/s/ Robert W. Dickerson, Jr._
        Robert W. Dickerson, Jr.

Attorneys for Plaintiff

HYPERTEXT TECHNOLOGIES, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff Hypertext hereby demands trial by jury of all issues, which are so triable in this action and on this complaint.

Dated:  December 12, 2019                    Respectfully submitted,

BURKE, WILLIAMS & SORENSEN, LLP
Robert W. Dickerson, Jr.
Matthew D. Murphey
John Yang

By:  _Robert W. Dickerson, Jr._
        Robert W. Dickerson, Jr.

Attorneys for Plaintiff
HYPERTEXT TECHNOLOGIES, LLC

LA #4817-4109-2270